Good morning. Good morning, Your Honor. My name is Thomas Dubs. I'm from the Labiton firm. We represent the plaintiffs below and the appellants here. I'd like to reserve three minutes for rebuttal, if I may. Can I just have a clarification? You've had, well, three sets of lead plaintiffs. Are you here representing all of them or just Reese and, how are we saying this, Rutria or whatever it is? The Rhode Island. Right, exactly. So that's who you're representing, right? Just them? No, the only one who's left on the playing field is Mr. Reese. And so this is, in that sense, a death knell, so-called death knell appeal, and that if Mr. Reese is held to have merged his claim or otherwise has problems, the whole case goes away. So you really were excited to come here today? Well, it's my third trip here, so yes. Well, my first question is, was Reese intentionally not named as a plaintiff in the amended complaint or the consolidated complaint? No, he was intentionally put into the caption of the complaint, and the question of what is named is really an issue, and the term named in the class action world is a term of art. There are absent class members who are out there, there's a lead plaintiff, and then there is this other group called named plaintiffs. But what do you have to have in the complaint to have a named plaintiff be a named plaintiff? If you have him in the caption, under Rule 10, we submit that's sufficient. We don't have to say he's a named plaintiff and he lived here and he did such-and-such. That's not necessary. Under Rule 10, that is sufficient. Now, what's most important here is if we look, there are two orders that intertwine in this case, and both orders have to be looked at and are before the court. There's an April 3rd, 2015 order, and then there's the ultimate dismissal order, which was later in November of 15. And the juxtaposition of those two orders is very telling. Let's look at the April 3rd order in response to your Honor's line of inquiry, if I may. In April, the remained, this is at ER 212, ER 212 line 9, plaintiffs did not appeal either aspect of the order. There remained one named but non-lead plaintiff to continue to prosecute the case, individual investor Mr. Reese, who purchased 11 shares. She goes on to say two lines later, plaintiffs now move to substitute lead plaintiffs and to elevate Mr. Reese as a substitute. And then tellingly on line 19, defendants are not prejudiced in a legal sense by a slight delay, particularly when one of the proposed lead plaintiffs has always been a named plaintiff. So from the point of view of the judge who's been sitting on this case for eight years, she views Mr. Reese as a named plaintiff, and what this we wanted to bring in Rhode Island, and we wanted to elevate Mr. Reese to be lead plaintiffs. Let me, one thing that confuses me about this is that if I understand, all that's left is the purchase of ADRs and alleged misstatements made between March 15, 2006 and June 30, 2006, right? Correct. You just said, I think, that Mr. Reese held 12 shares of ADRs, didn't mention ADRs during that time. I thought he didn't own any ADRs. No, he owned ADRs during that time period. He did? Yes, sir. Where's that in the record? I thought it was just to the contrary. I will refer to the court if I can send a letter, but he's an ADR purchaser. Okay, that's very important, at least from my perspective. If he doesn't own ADRs, he's got a problem, and you've got a problem. Well, that may very well be the case. I mean, there's another issue as to whether he can raise the rights of the ordinary shareholders, but let's assume under Morrison he cannot. If he doesn't own any shares during the relevant time period, how can he possibly be the lead plaintiff? That's a fair point, but he owns ADRs. So, you know, if you got somebody, maybe your colleague could look that up for us, because that's critical from my perspective. Fair enough, Your Honor, and that has not been criticized by my learned colleague on the other side, nor has it appeared in the briefing. I just assume you're all learned, but I still want to know whether he had ADRs. Even if we're ignorant, we'll get you the answer, Your Honor. So the juxtaposition of what the judges view of Mr. Reese when he was a named plaintiff in April, and then in November when she says, based on three grounds essentially, one and two corollary grounds, that he merged his She reads Schnabel, and we can debate whether she reads Schnabel accurately or inaccurately, but I would suggest it's moot given the Supreme Court's decision in Hall that basically says Johnson is still the law, and it's basically a strong presumption that claims are not merged unless there is... Let me ask you this. As I understood it, the only reason why Mr. Reese was on the bench was because of the name of the complaint. That's right. That's correct. He ordered... And in no other way was he wasn't mentioned in the list of lead plaintiffs. He wasn't mentioned in the allegations of the complaint. He wasn't listed in the demands of the complaint. He was just gone, except in the title. No, he wasn't just gone. He was on the field, but he was sitting on the bench, and that's acceptable. What an apt metaphor. So he was on the bench. Does it say somewhere in the complaint where he was on the bench? I don't remember any reference figuratively speaking to his being on the bench. It doesn't, but the key is that when he's, to extrapolate the metaphor, when he suits up, when he files his original complaint, that's what triggers it. That's good enough, and once he gets on the field, once he has brought his own complaint, then the question is, what do you need to throw him off the field? What if the team said, you know, you suited up, but you got the wrong size uniform, you're not big enough, get out of here, go in the locker room, we're gonna continue on the game without you. That's not good enough. They have to say you're fired, or Reese has to say, I quit the team. Can I ask you this? This is a little bit unusual in that the District Court's consolidation order required the caption, as you're pointing out, to be styled Claude A. Reese versus John Brown, etc. If instead, the consolidation order had changed the caption to say, you know, In re, whatever, whatever, securities, fraud litigation, and the complaint your firm filed was otherwise exactly the same, I gather you would basically not be here? You would concede that you have no leg to stand on? I don't agree with that for the following reason, Your Honor, because one has to take the consolidation order as a whole, and one of our problems is that eight years later, the court below said what she thought the district judge then in California, the transformer judge, appeared to be saying, and what his intent was. But if we look at that, when he talks about merger, he talks only about merging the complaints. He doesn't talk about merging Mr. Reese's claim. So it is a, there are... I differ with you. I'm looking at the sentence, and I think it says quite clearly that these two separate actions, which under Hall might ordinarily be deemed to retain their separate existence, are in this instance going to be merged into one action. That's exactly what the order says. And it seems to me, it seems to me that we have a situation here where your client, Mr. Reese, essentially consented to something that might not ordinarily occur under Rule 42 on its own. Well, he did, he didn't not consent, and indeed there are a couple of cases that we've cited where district courts did it, what we would contend would be the right way, where they interrogated counsel or the clients and said, you know, is this what you really want? Are you consenting to merge your claim? I mean, if you look at the consolidation order itself at ER 397... That's what I just read from. Okay, well to the extent the two complaints differ, they will be merged and combined into one action. Exactly. So going forward, we do not have two separate actions with their own independent status. We have one merged action. That's what that says. I disagree respectfully with your Honor. What that says is that there's going to be one complaint. It doesn't say... That's one action. Well... It doesn't say one complaint. Obviously, there's going to be a consolidated complaint. What's key about that is it said these two complaints are going to be merged into one action going forward. To the extent that the two complaints differ, they, the antecedent of they, is the complaints. Right. The complaints will be merged and combined into one action. So what... Just not to not to debate, quibble the grammar, but it's also important to realize that in these cases, pleadings are often consolidated and put together, but that doesn't mean that the claims themselves are merged. And if you want... Don't you have to look at the actions of the parties in addition to what my colleague referred to? Not only did the judge refer to the merging of the actions, but Mr. Rees and his counsel were nowhere to be found for six and a half years. Nobody appeared for him. He didn't appear. He didn't say anything. Didn't sign anything. Didn't appear in That's not quite right, Your Honor. Okay, how's it wrong? Well, number one, we were as counsel and we were always there. We always viewed him as a name. To appear in his name? Yes. You did. So in what pleadings did you file during that time where Mr. Rees's name was mentioned? Every pleading had him in the caption. Because that's what the court said, but... Well, that's also what Rule 10 says is sufficient. So it's not, it's not just a mere scrivener's error on the part of I mean, that is good enough. You don't, there's no requirement... You told me, hang on, you told me when I asked you if the caption had been changed to in-ray securities fraud litigation, blah blah blah, that that wouldn't change anything. And what you keep coming back to, all you keep coming back to, is the fact that in the caption that the court ordered, your client's name remained there. So what, so I think you got to just throw that out the window, because you you've said that if the caption had been ordered otherwise, you'd still be here. That's, that's correct. So what else do you have besides the client's name kept being listed in the caption? Because the key issue is, did the client voluntarily relinquish his claim? And Johnson and Hall indicate that that there's a presumption, if you will, against merger. So there has to be a clear indication, I am giving up my claim. Now, because you are sitting on the bench, you are not saying, I am quitting the team. You are not saying, I will never play. Indeed, you want to play, when you're ready to play. And what happened here was, everybody else got injured, so he was the only one left, so they had to put him on the field. How can you play football with one guy? Well, they got the other team to volunteer. You demonstrated how extrapolating metaphors can be dangerous. I think this was a mistake on your firm's part. You, you were a little bit late in the game. You should have listed him in the body of the complaint as a named but non-lead plaintiff. You didn't do that. It turned out you made a terrible decision on appeal in the second go-around. I don't know if it was you personally, but I think it was your firm. You could basically, you know, conceded away matters that left your original clients out of court. And then you looked and realized, oh, my God, we only listed them as the plaintiffs in the case. So I just don't have much sympathy, actually, for your position here, because you could have easily avoided this by just listing Mr. Reese as a party in the body of the complaint and just mention that he is nonetheless continuing on as a named plaintiff, but obviously he's no longer, he can't be the lead plaintiff because the court has designated someone else to take that role. Well, we're not asking for sympathy. All we're asking for is for you to find that Mr. Reese never said, I am voluntarily giving up my claim, and that is sufficient. Now, as to what's happened here. Let me ask you quickly. Do you have any authority for the proposition that just merely being in the caption is sufficient? Yes. Rule 10 is sufficient, because it doesn't require in the complaint that you have to list anyone. But if I could return to his honors question, because if I can recast it somewhat, sort of what happened here. Okay. What happened here is, for example, we tried to get Rhode Island in. The PSRA says get these institutions in. We got them in. There was a series of intervening Supreme Court decisions that dealt with tolling that basically said we can't get any of those people in. Okay. So then who's left? Well, Mr. Reese is left, and Mr. Reese has been sitting there. Okay. He's been sitting there with his 11 shares. Am I going to say to you that someone with 11 shares is my dream lead plaintiff? Of course not. But he's the only one left, and unless the other side can show that he voluntarily and knowingly said I do not want my claim, Hall trumps that. And it trumps any, what I would say, and we differ on this, interpretation of the consolidation order, because I do not think at best it's ambiguous. I think it's not just the order. It's the complaint that your firm filed. Because, well, maybe you can educate me on this. After, I mean, Mr. Reese had other counsel. You guys won the lead counsel battle. You all were designated, am I right? You guys were designated lead counsel. Right. Your clients were lead plaintiffs. Well, no, we brought the, as I recall, we brought the original complaint from Mr. Reese. So we were with Reese from the beginning. Okay. I thought he had some other lawyer. Well, no, he does. Glancy Binko is his co-counsel. Okay. Well, anyway. And they brought him to the party. My point is, let me ask you this, because you are much more experienced in this kind of thing than I am. Let's say that you had a single individual like Mr. Reese who was represented, let's say he was represented by a sole practitioner. Sure. He files a complaint. You come in with the big institutional investors. You win the battle. The judge says, you're going to be lead counsel. Your clients are going to be lead plaintiffs. And I want one consolidated complaint. All of these actions are going to go forward under this one consolidated complaint. I assume that if you are representing Mr. Reese, what you would insist upon is that that consolidated complaint include him as a named plaintiff, albeit not a lead plaintiff, right? You would want him listed in the body of the complaint. And if the other counsel refused, you would make some noise about that, wouldn't you? Well, yes and maybe no. Unfortunately, it's not clear. Sometimes there are named plaintiffs who the court or counsel believe has a designated role. So if you have a stock case and there's some option off on the edge, you have a named plaintiff to deal with those options. Okay. But even if that's not the case, under Hall and Johnson, even with a consolidated complaint, unless there is an absolute voluntary merger, the other people are still there with their individual cases. And I would refer the court to Justice Ginsburg's footnote three in Gilboyne, where she talks about consolidation and merger for a period of time, but then after the discovery is done, for example, then the merger becomes undone. And that's the way these typical, typically these cases are done. And that's your honors hypothetical of, you know, what would I think if, you know, I won the lead plaintiff fight and these other people were hanging out? Well, there's an unwritten rule they're not going to get in my way, but because we're lead plaintiff, but that doesn't mean that they are dismissed. I mean, remember, what's going on here is you are essentially saying Reese is dismissed. And by the way, to your honors point, just as a factual point, they took his deposition. They took his deposition and they took his deposition after, you know, he was put up for lead plaintiff. I mean, one of the ironies here is after he was put up. But what about after the consolidation? Did they take it after the consolidation? Well, if you take the district court's view of the world, the consolidation happened seven years ago. So, yes, but that's almost by definition at this point. My colleagues and I may have a little bit more of your overtime, but let me just, I want to confirm one thing with you. Your statement is, I believe, that Mr. Reese owned ADRs between the period of March 15, 2006 and June 30, 2006. Is that your statement to the court? That is my belief right now. And we're going to double check. What? You don't know? As of right now, I don't know because I've assumed it because it hasn't been brought up in seven years. Do you agree if he didn't, he's toast? Figuratively speaking, of course. I understand that. In all likelihood, yes, Your Honor. Okay. Any questions by my colleague? Just one last question. Is your position that Reese can't withdraw from this lawsuit by an amendment to the complaint where he's not named? He has to do some sort of affirmative action to be removed from the lawsuit? There has to be evidence that he is voluntarily waiving his rights. And I think one can confuse that with the paper flow going back and forth. And I think that that's what Hall has said. And what Hall has done is make us turn square corners on this merger issue. And there's been a lot of practice that's grown up about complaints and how they look and who's on them and who's not on them. And what the Supreme Court and Chief Justice Roberts told us, starting with Lord Mansfield, is that they remain individual actions unless someone voluntarily says, okay, merge me out, I dismiss myself. I'm glad you mentioned Lord Mansfield. That's an appropriate thing for Friday. Excellent. All right. Thank you very much, counsel, for your argument. We'll hear from the other side. May it please the Court. Good morning. Good morning. Richard Peppermint on behalf of the defendants. I'd like to just start by briefly responding to three issues that came up during my friend Mr. Dubbs' argument. First, Your Honor, to your question about what Mr. Reese purchased, I think all that's in the record is that he purchased 12 shares on May 12, 2006, which timing-wise would put him within the narrow three-month class period. It's not in the record, as far as I know, whether those are BP ordinary shares or ADRs. I think, however, that it's highly improbable that an individual investor in Los Angeles purchased BP ordinary shares on the London Stock Exchange, and much more probable that what he purchased was ADRs on the New York Stock Exchange, which is why we've never made an issue of that. So, from your perspective, you're not quibbling about the nature of what he purchased. You're willing to concede that he did, in fact, own the requisite types of securities to fit into this category? Your Honor, to simplify matters, I am willing to concede that. I mean, our argument, plain and simple, is that Mr. Reese ceased to be a party in this case when the consolidated amended complaint was filed in his action, in that very docket. Do you think that Reese purposely was removed, had been removed as a plaintiff? Your Honor, I do. A couple of things. One thing I wanted to point out, from May 2008 to December of 2014, every single pleading that the Labaton firm signed was as counsel for the lead plaintiffs, which every pleading defined to be the institutional investor group. So the notion that the Labaton firm, between May 2008 and December 2004, was appearing on behalf of Mr. Reese is inaccurate. Another thing, the original Reese complaint in 2007, showing how long we've been going at this, was filed by an individual practitioner in Los Angeles. That's at ER 405 of the record. The Labaton firm filed a subsequent complaint on behalf of the institutional investors group. To Your Honor's question, Mr. Reese ceased to be a plaintiff in this action, I think, for two independent reasons. First, the consolidation order at ER 397 plainly stated that the complaints were being merged and combined into a single action. Your Honor read the language of that. But second, and I would say equally important, I think this is the ground that Judge Peckman relied on, an amended complaint was filed in the docket for Mr. Reese's own action. And that amended complaint didn't identify him as a plaintiff anywhere in the body of the complaint, anywhere in the allegations of the complaint. It simply listed him in the caption, and it did so by virtue of the requirements of the April 2008 consolidation order. So how do you respond to what we just heard, that for him to have been withdrawn as a plaintiff in this case, he'd have to acknowledge, make some affirmative acknowledgement that he's given up his rights? Your Honor, I don't think that's the case. I think this Court, since 1956 in the Bullen action, has been very clear that an amended pleading supersedes the original completing and renders the original pleading nonexistent. And that once amended, the original complaint serves no function at all. That's the Bullen decision. The Court subsequently cited that Hornbook law rule in the Lacey decision in 2012. So why isn't the caption enough then? His name's in the caption all the way through. Your Honor, a couple things to that. First of all, the only authority that the plaintiffs cite for the notion that merely listing someone in the caption is sufficient is Rule 10a. If you look at the decisions of the Courts of Appeals and really Hornbook, they reject the notion that simply being listed in the caption is enough to confer party status. The Fifth Circuit squarely held that in the Federal Savings and Loan decision at 849 Fed 2nd, 1469, that's in footnote 9, making express reference to Rule 10a. This Court reached the same result in the Yeseda decision that we cited in our briefs. Even the Wright and Miller chapter on federal practice that discusses Rule 10a, that's 5a Wright and Miller, Section 1321, squarely states that the contents of the caption are not considered a part of the pleader's statement of the claim. Now I'm omitting some action, some language. Moreover, the caption is not determinative as the identity of the parties to the action. And even beyond the discussion of Rule 10a, the Supreme Court and this Court for decades, and the Tenth Circuit as recently as last Friday, has held that merely being listed in the caption does not make someone a party. The Supreme Court held that in the United States' X. Rel. Eisenstein case. This Court said that back in 1959 in the Hoffman case. Well, let me ask you this. Would you have changed any of your trial or your tactics, strategy, or taken any additional depositions or discovery had you considered Reese to be a party in this case? Your Honor, what we would have done differently is if we thought that he was sort of a free-form plaintiff out in the ether who could spring back into these actions at any moment, back in 2008, we would have pressed him either to voluntarily dismiss his claim or we would have moved to dismiss it. I mean, there are – Why in the world is – I don't understand for a second why you say that. Let's say that he had in fact been named as a named plaintiff but non-lead plaintiff in that amended, consolidated complaint. Why would you be in a position to get rid of his claim? Your Honor, if that was Judge Reese's questions, I misunderstood it and I misspoke. If he were named in the body of the complaint, in the very first paragraph of the complaint and the part of the complaint that was parties, if he was named there as a plaintiff, we would not have done anything differently. And Mr. Dubs refers to the practice in securities class actions of there being lead plaintiffs and also named plaintiffs. But the named plaintiffs in that context are plaintiffs that are actually named in the allegations of the complaint. I mean, you will see complaints where under the party sections there are the lead plaintiffs and there are the other named plaintiffs. And you actually have cases, the countrywide decision that they cite in their briefs, where in connection with class certification briefing, one of the lead plaintiffs does not have the ability to represent a certain subclass and one of the named plaintiffs who's named in the body of the complaint steps forward as a class representative there. There is no authority that's cited anywhere for the notion that merely being listed in the caption confers party status. Well, okay. Can I ask you this then? Of course. Let's say that ER 397, I'm Mr. Reese, I get this consolidation order, and I do not want my separate action merged into this much larger action that these other folks have brought, right? And, you know, I guess my counsel confers with their counsel and I see the amended consolidated complaint that they intend to file and I'm not in there. What exactly am I supposed to do to prevent my action from just going poof? This sort of goes back, I think, almost to what the Supreme Court said in ANZ, that absent class member steps they can take to protect themselves from the expiration of the statute of repose. You know, the short answer is that you have to do something. You have to make a motion to intervene if you're not listed in the complaint. You need to file a separate complaint if you're not listed. At the very least, you need to express some objection to the court either for the merger of the actions or for your omission from the consolidated complaint. The one thing that you should not be able to do is sit completely silent for six and a half years, not participate in the litigation in any way, have no counsel representing you, and then attempt to spring back into it six and a half years later in December 2014 as if nothing had happened. You can imagine if you're Mr. Reese, and Mr. Reese was represented by counsel, and you get the amended complaint that has been filed in your action, in your docket number, and you see yourself and you're listed only in the caption and mentioned nowhere in the body of the complaint. I don't think there's any lawyer out there who would say just because you're identified in the caption, that's enough to keep you alive. The funny thing is if you look at it, if you look at the caption. What allegation needed to be in the complaint to keep him alive? That he is a plaintiff. I mean, what you would typically see is in the very first paragraph of the complaint that identifies the plaintiffs who are bringing the action, he would have to be listed together with the institutional investor group, and then in the section of the complaint that identifies the parties, there's an express section that identifies the parties, after the lead plaintiffs, he would need to be included, and I think he would have to be represented by counsel. So counsel appearing only on behalf of the lead plaintiffs wouldn't do it. You know, one of the funny things, if you look at the caption, if you look at the caption. So what it would need is saying, a plaintiff in this case is Mr. Reese. Right, right. And I believe if you look at the prior decisions of this court, the Hoffman decision, which said that the caption of an action is only a handle to identify it, and ordinarily the determination of whether or not a defendant is properly in the case hinges upon the allegations of the body of the complaint, not upon inclusion of the caption. This court made that same point at the end of 2017, the Liberty Mutual and Fire Insurance case, which was decided after briefs were submitted. It's 877 Fed 3rd 1081. And that case dealt with whether plaintiffs who were mentioned in the caption, but not in the body of the complaint, had status as the parties. And as I said, the Tenth Circuit, just on Friday, at 2018 Westlaw 2752570, reached the same result, saying although it was named in the caption, the complaint contains no factual allegations against the Justice Department. And, you know, here's sort of an example. I mean, Your Honor knows as a trial court judge how captions become sort of a historical relic back from when a case was first filed. Robert Malone has been in the caption as a defendant from the very beginning of the case because he was named as a defendant in Reese's original action. He ceased to be a defendant in the case with the filing of the consolidated complaint in May 2008, yet he's still been listed in the caption to this very day. Indeed, if you look at the caption for this appeal, two of the five defendant appellees identified, Mr. Malone and Mr. Marshall, haven't been parties to this case for years, but they continue forward in the caption just because that was the caption at the origin of the case. And to the point that was made earlier this morning, I mean, I would attach even less weight to the fact that Mr. Reese was listed in the caption because that was not a conscious decision of lead plaintiff's counsel. It was the provision of the consolidation order. The consolidation order said this case shall have the caption of Claude A. Reese versus Robert Malone and John Brown. And we used that caption really not thinking that that had any substantive significance up until December of 2014. And, you know, I recognize that, you know, from the perspective of this court and I'm sure from the perspective of Mr. Dubs, that this might seem like a harsh result and it might seem unfortunate that a case that is actually now on its third visit up to this court ends in this way. But, you know, really there are two independent factors that brought us here. I mean, the first, quite honestly, is the Supreme Court's ANZ decision holding that the American pipe tolling does not apply to statutes of repose. And as this court said in the Miguel decision, statutes of repose go to subject matter jurisdiction. So there is the hard cutoff of a claim that needed to be asserted in 2011 is a result of the Supreme Court's decision. And at this point can be changed, I believe, only by Congress. But the second thing that we sort of lose sight of is that when the Supreme Court handed down its Morrison decision in 2010, which held that only purchasers on domestic exchange can bring claims under the Securities Act, that ruling in 2010 eliminated four of the five lead plaintiffs here, all of whom were foreign pension funds that purchased their shares abroad. Mr. Dubs obviously knew about that case. He actually argued the Morrison case in the Supreme Court. At that point, knowing that you had lost 80 percent of your plaintiffs in 2010, which would have been before the expiration of the statute of repose, I mean, it was incumbent upon lead plaintiffs' counsel to really scrutinize what plaintiff was left and whether they're in a position to protect the absent class here. The one plaintiff that was left was the pipefitters' union, because that's the only domestic lead plaintiff that bought shares on the New York Stock Exchange. And it bought its shares early in the putative class period, before really the statements that were the focus of the action. At that point in 2010, it would have been easy to substitute in additional plaintiffs for the protection of the class. That wasn't done in 2010. And then the situation was exacerbated by failing to appeal the dismissal of the claims based on the statements that gave pipefitters' claim. I think what you spent the last minute or so talking about wasn't really the problem. The problem was the narrowing of the class period on the second appeal. That's what caused the problem for them. Your Honor, the narrowing of the class period on the second appeal eliminated the standing of pipefitters. Right. You only need one. You do only need one. But, Your Honor, if you have only one and you look at when that one plaintiff purchased your shares, I think it's incumbent upon you to ask the question whether you need more. And, you know, back in 2010, after Morrison was handed out, there was no prohibition at all of adding more. But you're right. The decision when we were up here last not to appeal the dismissal of the claims based on the earlier statements that preceded pipefitters' purchases, I mean, that was, to use Mr. Dove's phrase, that was the deaf no. Other questions by my colleagues? Thank you, Counsel. Your time is up. You don't have any rebuttal time, Counsel. I'm sorry, but we let you go on a little bit. But because you look so distressed, we're going to give you a minute because this is the death knell hearing, right? So we'll treat this as a capital case, and you can have one more minute. Well, you're right. What Mr. Peverman said is quite right, that this is very serious, given the underlying facts and given the fact that there have been a number of intermediate decisions which have cut this class. And if we would have come in with a whole ragtag bunch of people, we would have been criticized. We tried to come in with Rhode Island, which is a very substantial pension fund. They didn't make it. Ironfitters didn't make it. For a variety of reasons, mainly intervening legal decisions, they didn't come in. And the idea that after Morrison we were supposed to come in with a cadre of another lead plaintiff isn't it. The key, I would suggest to you, besides Hall, which is a tough, tough ruling, and it cuts our way, not their way, is what did the district court think who was closest to this? And on April 3rd, she said three times Reese was a named plaintiff. And if it was so obvious, and this was such a sham, and this is just all the stuff about how pleadings are framed, she would have cut through it, because God knows she's cut through everything else, which is why we've been here three times. Thank you. We appreciate that additional. And I will get back to Your Honor on the point you raised. He's already conceded the point, so I guess we don't need that now. Very good. But I understand from somebody today that there is a brewery here that does gluten-free beer, so maybe the two of you can go have something to settle this case in some way. Mr. Peppermint and I have very good professional relationships. We may do that. No, I can tell that. Thank you. The case disargued is submitted. Thank you, gentlemen.
judges: M. Smith, Watford, Rayes